UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CHRISTOPHER WAYNE HOLDER #628962 | CIVIL ACTION NO. 23-cv-714 SEC P |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TIM HOOPER | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

A Bossier Parish jury convicted Christopher Wayne Holder ("Petitioner") of the second-degree murder of his mother, Dr. Donna Holder. Petitioner received a mandatory life sentence. His conviction was affirmed on appeal. State v. Holder, 181 So.3d 918 (La. App. 2d Cir. 2015), writ denied, 212 So.3d 1166 & 1176 (La. 2016). The state courts denied Petitioner's post-conviction application. He then filed the federal habeas corpus petition that is now before this court. For the reasons that follow, it is recommended that the petition be denied.

## Next Friend/Curator Status

The habeas petition is signed by Petitioner's father, Gary Holder, who states that he is acting as the curator/guardian for his son. Mr. Holder represents that officials at the Louisiana State Penitentiary contacted him shortly after Plaintiff was sentenced and advised that Petitioner was so mentally unstable that he needed to be interdicted. Mr. Holder commenced a state court procedure, and the court appointed him as Petitioner's curator. He has filed copies of the relevant state court orders in the record.

Rule 2(c)(5) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a habeas petition be signed "by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." That statute requires that the petition be signed "by the person for whose relief it is intended or by someone acting in his behalf." This person is sometimes referred to as a "next friend." He must (1) provide an adequate explanation, such as mental incompetence, why the real party in interest cannot appear on his own behalf to prosecute the action and (2) show that he is truly dedicated to the best interests of the person on whose behalf he seeks to litigate. It has also been suggested that a "next friend" must have some significant relationship with the real party in interest. Whitmore v. Arkansas, 110 S.Ct. 1717, 1726-28 (1990).

The record contains ample evidence of Petitioner's history of serious mental illness, and Mr. Holder's submissions demonstrate that he is dedicated to the best interests of his son, with whom he has a significant familial and legal relationship. Also, Louisiana law provides in La. C.C.P. art. 684 that "the curator is the proper plaintiff to sue to enforce a right of a person fully interdicted," and Fed. R. Civ. Pro. 17 allows a guardian to bring an action on behalf of an incompetent person. The court finds that Mr. Holder has provided an adequate explanation of the necessity of resorting to the "next friend" device, so he has authority under § 2242 to sign the petition and related filings on behalf of Christopher Holder, who is the petitioner. See Uranga v. Davis, 893 F.3d 282, 286 (5th Cir. 2018).

**Background Facts**

Dr. Donna Holder was stabbed to death in her home on November 18, 2011. Petitioner, who had a history of mental illness and being committed, placed a 911 call from

the home that he shared with his mother and reported that she had been stabbed by an intruder. The police officers who responded found Petitioner covered in blood. The police quickly came to believe that there was no intruder. They questioned Petitioner, who made incriminating statements. An autopsy showed that Dr. Holder died as a result of multiple stab wounds and that her body also displayed defensive wounds. Together, there were 43 stab wounds, 17 slash wounds, and approximately 32 superficial incisions. A complete knife was lodged in her left chest cavity.

Petitioner was indicted for second-degree murder. The trial court ruled, based on the reports of a two-physician sanity commission, that Petitioner was competent to stand trial. Petitioner entered a plea of not guilty and not guilty by reason of insanity.

The trial defense focused on the insanity defense. There was evidence that Petitioner had been prescribed medications beginning when he was about 14 years old. Petitioner often refused to take his medications, and it was during those times that he was sometimes committed. Petitioner also had a history of violence, including physically attacking his father. Dr. Holder told others that she was afraid of him, and she installed a deadbolt inside her bedroom door for protection.

Gary Holder, Petitioner's father, admitted that the issue of whether to medicate Petitioner was a large part of his divorce from Dr. Holder. There was testimony that Gary Holder said that he did not believe that Christopher had bipolar disorder and that he wanted to take his son off all medications. Gary testified that he conducted independent research on physicians, medicines, and mental illnesses, which he provided to Dr. Holder, and the divorce was contentious due to the medications that Petitioner was taking and Gary's

frequent suggestions that they were not appropriate. Dr. Holder once had to resort to a court order to get her son to take his medications.

A physician friend of Dr. Holder testified that, on the week of her murder, Dr. Holder expressed anxiety about Petitioner's noncompliance with his medications and her intent to place him in a group home. Petitioner vehemently opposed that plan.

No treating physician was able to testify directly about Petitioner's mental state on the date of the murder because he had stopped treatment at least a month before. Dr. Mark Vigen, a psychologist, interviewed Petitioner at least five times. He testified that, on one meeting about a year after the crime, Petitioner said he saw through Jesus' eyes and that Jesus killed Dr. Holder. The case was only the fourth time in Dr. Vigen's 37-year career that he opined that a defendant was not guilty by reason of insanity.

Dr. George Sieden, a psychiatrist, testified that he was unable to get Petitioner to discuss the crime, but Petitioner did discuss his medical history and diagnoses. Dr. Seiden testified that a defendant may suffer from schizoaffective disorder and be psychotic at the time of an offense, but he may also know that what he is doing is wrong. He noted that Petitioner called 911 and initially reported that an intruder committed the offense (which suggested knowledge of wrongdoing and an attempt to cover it up). Dr. Seiden opined that, despite Petitioner's psychotic disorder, Petitioner was capable of distinguishing right from wrong at the time of the offense.

The jury heard testimony from the competing mental health professionals, as well as from friends, neighbors, and multiple healthcare providers who had personal knowledge about or experiences with Petitioner's mental health history, prior threats of violence

against his mother, or how Petitioner acted after he was taken into custody. The jury returned a 10-2 verdict of guilty of second-degree murder.

**Unanimous Jury Requirement**

At the time of Dr. Holder's murder in 2011 and Petitioner's trial in 2014, Louisiana allowed a conviction of second-degree murder by a less than unanimous jury verdict. Petitioner's jury voted 10-2 to convict. That was a valid verdict under state law at that time, and the Supreme Court had previously upheld the constitutionality of Louisiana's state laws on the issue. Apodaca v. Oregon, 92 S.Ct. 1628 (1972); Johnson v. Louisiana, 92 S.Ct. 1620 (1972). See McDonald v. City of Chicago, 130 S.Ct. 3020, n. 14 (2010) (explaining the "unusual division among the Justices" that led to those decisions).

Apodaca and Johnson were still binding in 2016 when Petitioner's conviction became final at the end of his direct appeal process. The Supreme Court overturned them four years later in Ramos v. Louisiana, 140 S.Ct. 1390 (2020), which held that the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in state court. Even before that, in 2018, Louisiana voters approved an amendment to Article 1 § 17(A) of the Louisiana Constitution to require unanimous jury verdicts in cases where the offense was committed on or after January 1, 2019. The amendment preserved the legality of a 10-2 verdict for offenses committed prior to January 1, 2019, so it had no effect on Petitioner's conviction for a crime committed in 2011.

Petitioner argues that Ramos should apply retroactively to render his verdict unconstitutional. This argument is foreclosed by Edwards v. Vannoy, 141 S.Ct. 1547 (2021), which held that the rule announced in Ramos does not apply retroactively on

federal collateral review such as this habeas proceeding. The Louisiana Supreme Court reached the same conclusion for state collateral review in State v. Reddick, 351 So.3d 273 (La. 2022).

Petitioner argues that a different result should be reached when dealing with trials involving a plea of not guilty by reason of insanity, which he urges makes the Ramos decision substantive rather than procedural and changes the retroactivity analysis. Petitioner presented his Ramos retroactivity argument to the state court in his post-conviction application. Judge Nerren denied the claim in a reasoned opinion. Tr. 1869, 1877-79. The state appellate court denied a writ application "[o]n the showing made" (Tr. 1891), and the Louisiana Supreme Court also denied a writ application. State v. Holder, 353 So.3d 124 (La. 2023).

Petitioner's retroactivity argument was denied on the merits in state court, so a habeas application may be granted only if that adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). Clearly established federal law for purposes of the statute includes only the holdings of Supreme Court decisions. Woods v. Donald, 135 S.Ct. 1372, 1377 (2015). And "an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Id. at 1376.

Petitioner has not pointed to a Supreme Court decision that holds that the retroactivity analysis pronounced in Edwards is different in cases involving an insanity

plea. Accordingly, federal habeas relief is not permitted with respect to this claim. The same is true of Petitioner's challenge to the constitutionality of La. C.Cr.P. art. 782(A), which implemented the 2018 constitutional amendment and states that a non-unanimous jury is allowed for an offense committed prior to January 1, 2019. This challenge is just another attempt to make Ramos retroactive, and that argument has been squarely rejected by the Supreme Court.

**Jury Venire**

Petitioner argued in his post-conviction application that the Bossier Parish jury selection process violated La. C.Cr.P. art. 416(B). It states: "A petit jury venire for the first week of a session shall not be drawn from a general venire containing less than two hundred fifty names, and no petit jury venire for any subsequent week shall be drawn from a general venire containing less than one hundred fifty names." Petitioner argued that only 124 jurors were on the petit jury venire from which jurors were selected. He argued that this violated both state law procedure and the United States Constitution because it did not result in a cross-section of the community. Petitioner also argues that the cross-section requirement was violated because jurors were excused for no reason and multiple juror questionnaires were filled out in the same handwriting.

Judge Nerren stated in his ruling that defense counsel's argument confused the general venire and the petit jury venire (jury pool). He stated that Petitioner's petit jury venire was drawn from a general venire consisting of 300 names, which far exceeded the requirements of Article 416(B). Tr. 1875-76. The appellate and supreme courts denied writ applications.

Petitioner repeats his arguments made in state court that there were only 124 qualified jurors on the venire from which jurors were selected, but he does not (1) explain why Judge Nerren's factual finding and explanation was incorrect or (2) point to clearly established federal law, as decided by the Supreme Court, that would warrant habeas relief with respect to this claim. Petitioner's principal argument is that state procedural law was not followed, but "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 112 S.Ct. 475, 480 (1991).

Petitioner argues the process did not result in a venire drawn from a fair cross-section of the community. The Sixth Amendment secures the right to be tried by an impartial jury drawn from sources reflecting a fair cross-section of the community. Taylor v. Louisiana, 95 S.Ct. 692 (1975). In Duren v. Missouri, 99 S.Ct. 664 (1979), the Court described three showings a criminal defendant must make to establish a prima facie violation of the Sixth Amendment's fair-cross-section requirement. He must show: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

The groups at issue were women in Taylor (excluded from jury service by Louisiana law) and Duren (Missouri law allowed women to opt out of jury service). A habeas petitioner in Berghuis v. Smith, 130 S.Ct. 1382 (2010) argued that a juror assignment procedure in Michigan resulted in the underrepresentation of African Americans on jury

venires. The Supreme Court rejected his claim because no clearly established Supreme Court holding had held that such a system gives rise to a fair-cross-section claim. Petitioner's habeas claim should also be denied. He has not (among other things) identified a distinctive group that was excluded, and he has not pointed to a Supreme Court holding that suggests a fair-cross-section claim could be based on similar facts.

**Ineffective Assistance of Counsel**

**A. Introduction**

Petitioner argues that his trial attorney rendered ineffective assistance of counsel in various ways. To prevail, Petitioner must establish both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 2071.

**B. Habeas Burden**

Petitioner's Strickland claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v.

Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S.Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

**C. No Evidentiary Hearing**

One of Petitioner's habeas claims is that the state court did not provide him a requested evidentiary hearing on his post-conviction application, particularly with respect to his claims of ineffective assistance of counsel. The state court received briefing on the issues and then issued a reasoned decision that denied the various claims of ineffective assistance. As explained below, the lack of a state court evidentiary hearing is neither the basis for an independent habeas claim nor does it prevent the federal court from applying deference to the state court's decision.

The federal habeas court does not sit to correct procedural errors alleged to have happened in the post-conviction process. "[I]nfirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001). See Kinsel v. Cain, 647 F.3d 265, 273 (5th Cir. 2011) ("no state habeas infirmities" rule barred habeas review of claim that state appellate court violated due process during post-conviction proceedings).

These rules have been relied upon to reject habeas claims that the state court should have held an evidentiary hearing on a post-conviction application. Mathis v. Dretke, 124 Fed. Appx. 865, 871-72 (5th Cir. 2005). There is no requirement that the state court hold a full and fair hearing before it denies a post-conviction application, and the federal court

applies a presumption of correctness to state court findings even absent such a hearing. Id., citing Valdez v. Cockrell, 274 F.3d 941, 949 (5th Cir. 2001).

**D. No Objection to Jury Venire Issue**

Petitioner argued in state court and in his habeas petition that trial counsel was ineffective because he did not object based on the alleged error with respect to the jury venire proceedings. Judge Nerren explained, as discussed above, why Petitioner's attack on the jury selection process was mistaken. He rejected the related Strickland argument, noting that "Petitioner's argument is wholly without merit as there was no cognizable claim/violation to which trial counsel could conceivably object." Tr. 1876. Petitioner has yet to demonstrate that Judge Nerren was wrong when he held that there was no factual basis for this objection. Failure of counsel to make meritless objections or file futile motions is not ineffective assistance. Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994). There is also no basis to find that, had counsel made such an objection, the result in the case would have been different.

**E. No Objeciton to Non-Unanimous Verdict**

There are some differences between the grounds of ineffective assistance articulated in Petitioner's federal petition and his accompanying memorandum. The petition does not directly list this claim, but the memorandum complains that trial counsel did not object to the non-unanimous verdict allowed by Louisiana law. The claim may not have been properly presented, but the court will address it.

At the time of Petitioner's trial, all state and federal courts had rejected challenges to Louisiana's non-unanimous verdict law. State v. Bertrand, 6 So.3d 738 (La. 2009)

(noting multiple prior rejections of constitutional challenges); Thompson v. Vannoy, 2018 WL 3404179, *11 (W.D. La. 2018) ("Article 782 has withstood constitutional challenges and the Supreme Court has repeatedly denied certiorari on the issue since it was first affirmed in Apodaca").

It was not until Ramos was decided years later that there was a solid basis for such a claim. Justice Kavanaugh stated in his Ramos concurrence that "an attorney presumably would not have been deficient for failing to raise a constitutional jury-unanimity argument before today's decision—or at the very least, before the court granted certiorari in this case. Ramos, 140 S.Ct. at 1420 (Kavanaugh, J., concurring). "Before today, after all, this Court's precedents have repeatedly allowed non-unanimous juries in state criminal cases." Id. Justice Kavanaugh cited Green v. Johnson, 116 F.3d 1115, 1125 (5th Cir. 1997), which held that there was "no general duty on the part of defense counsel to anticipate changes in the law" and that counsel was not ineffective for failing to raise a claim that state courts had rejected repeatedly.

A federal district court specifically rejected a similar claim that defense counsel was ineffective for not challenging Louisiana's non-unanimous verdict rule in a case that was tried before Ramos. Hawthorne v. Vannoy, 2023 WL 8195617, *32 (E.D. La. 2023). The same result should be reached in this case. Counsel was not ineffective for not anticipating Ramos, so this claim lacks merit.

**F. No Objection to Jury Instructions**

Petitioner argued in his post-conviction application that trial counsel was ineffective when he did not object to a jury charge regarding the consequences of finding a defendant

not guilty by reason of insanity. Judge Nerren quoted the lengthy instruction in his opinion that denied post-conviction relief. Tr. 1873-74. The instruction explained the requirements for the jury to find that the defendant was not guilty by reason of insanity. It then explained that if such a verdict were returned, the court would remand the defendant to the parish jail or a private mental institution, after which a hearing would be held and the defendant would have the burden to show by a preponderance of the evidence that he could be discharged or released on probation without danger to others or to himself. The court then explained that if the court determined that the defendant could not be released without danger, the court must order him committed to a proper mental institution for custody, care, and treatment. If so committed, the court explained, the defendant shall not be released until the court determines that he can be released without danger to himself or to others.

Petitioner's counsel in the post-conviction proceedings conceded that the instruction was proper, but he argued that it was also proper for trial counsel to have requested an additional special instruction that fear of a release may not properly affect a verdict. The state court found that Petitioner failed to show that trial counsel, by not objecting to the admittedly correct instruction, made an error so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.

The post-conviction claim was denied, and the same result should follow in this federal habeas proceeding. Petitioner has not cited any law to suggest that such an additional instruction might have been granted if requested, and he certainly has not demonstrated any likelihood that the outcome of the proceedings would have been different

if counsel had made such an objection. The state court's denial of this claim is not subject to federal tampering under the deferential standard of 28 U.S.C. § 2254(d).

**G. Dr. Gary Mears**

Petitioner's counsel argued in his post-conviction application that counsel was ineffective because he failed to call Dr. Gary Mears to testify at trial. Dr. Mears is a board-certified neuropsychologist. The application stated that Mears had developed and used critical evidence in a related civil proceeding on Petitioner's behalf. Counsel stated that results of testing performed by Dr. Mears demonstrated the specific ways in which Petitioner lacked executive function that contributed to his ability to make rational or moral decisions. Post-conviction counsel stated that he was prepared to present the testimony of Dr. Mears and other evidence at an evidentiary hearing. Tr. 1622.

Two reports from Dr. Mears are attached to the federal habeas petition. Presumably, they were also filed in the state court record. Mears stated in each report that, at the request of defense counsel, he examined Petitioner at the Bossier jail to determine Petitioner's sanity during and around the time of the offense. He noted that Petitioner's history abounded with mental disorder diagnoses, including schizoaffective and bipolar disorders (with psychotic features). He wrote in each report that it was his professional opinion that Petitioner was insane in and around the time of the offense.

The state trial court elected not to have a hearing on the application. Judge Nerren noted that Petitioner argued that trial counsel was ineffective because he did not issue a subpoena for Dr. Mears or request a continuance of the trial after it became known that Dr. Mears had an out-of-state teaching commitment during the week of trial. Petitioner states

in his brief that there were 17 doctors who did testify at trial, but he contends that none of them dealt with the specific issue of executive function or testified about the particular testing performed by Dr. Mears.

Judge Nerren noted that numerous medical experts did testify at trial for both the state and defense, with many of them opining that Petitioner's mental condition at the time of the incident did not preclude him from distinguishing right from wrong, but with others concluding that Petitioner could not distinguish right from wrong at the time. He said that Petitioner did offer evidence about what Dr. Mears would have testified to at trial, but "no assertion is made that but for trial counsel's failure to subpoena Dr. Mears as an expert witness and/or request a continuance, the result of the proceedings would have been different under the requirements of Strickland." Tr. 1872. When the case reached the Louisiana Supreme Court, it held, "Applicant fails to show that he received ineffective assistance of counsel under the standard of Strickland[.]" State v. Holder, 353 So.3d 124 (La. 2023).

This claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether the federal court believes the state court's decision under Strickland was incorrect but whether the decision was unreasonable. As explained above, this is a substantially higher threshold, and the federal court's review is doubly deferential. "If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus,

"even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

Defense counsel may have improved the defense's case by attempting to subpoena Dr. Mears and force his attendance despite Mears' conflicting teaching assignment or by requesting a trial continuance until Dr. Mears was available. On the other hand, trial counsel may have decided, within the wide range of strategic discretion he was afforded, that Dr. Mears was not a great witness and that the wiser course was to base the defense primarily on Dr. Vigen's testimony. We do not know, and it is improper to assume that any uncalled witness was the result of fault by counsel, rather than a considered choice, or that the witness would necessarily have helped the defense. "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" Harrington, 131 S.Ct. at 790, quoting Yarborough v. Gentry, 124 S.Ct. 1, 5 (2003) (per curiam).

The state court considered the nature of Dr. Mears' anticipated testimony, noted that the trial record included a similar, competing testimony from multiple medical professionals, and denied the claim under the Strickland standard. The state court's decision might be subject to debate among reasonable persons, but it was certainly a reasonable application of Strickland to the available facts. This was not the sort of extreme malfunction of the criminal justice system for which habeas relief is permitted. This final claim must also be denied.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of September, 2026.

Mark L. Hornsby
U.S. Magistrate Judge